QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone:      (415) 875-6600
Facsimile:      (415) 875-6700

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Lance L. Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone:      (213) 443-3000
Facsimile:      (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Todd Anten (*pro hac vice*)
toddanten@quinnemanuel.com
Cory D. Struble (*pro hac vice* pending)
corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:      (212) 849-7000
Facsimile:      (212) 849-7100

*Attorneys for Plaintiffs Big Run Studios Inc. and Skillz Platform Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BIG RUN STUDIOS INC. and SKILLZ PLATFORM INC., <br><br> Plaintiffs, <br><br> v. <br><br> AVIAGAMES INC., <br><br> Defendant. | Case No.:  21-cv-04656-EJD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES INC.'S MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS** <br><br> Date:               January 20, 2022 <br> Time:              9:00 AM <br> Courtroom:    4, 5th Floor <br><br> Complaint Filed:    June 16, 2021 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED...................................................................2

BACKGROUND................................................................................................................. 3

LEGAL STANDARD ....................................................................................................... 10

ARGUMENT .................................................................................................................... 10

I.      PLAINTIFFS SUFFICIENTLY ALLEGE ENTITLEMENT TO STATUTORY
DAMAGES AND ATTORNEYS' FEES ............................................................. 10

II.     PERMISSIVE JOINDER OF PLAINTIFFS' CLAIMS IS APPROPRIATE.................. 15

      A.     Plaintiffs' Copyright Infringement Claims Arise Out Of The Same
Transaction, Occurrence, Or Series Of Transactions Or Occurrences.................. 16

      B.     Questions Of Law Or Fact Common To Both Plaintiffs Will Arise.................... 18

      C.     AviaGames Has Not Proven Prejudice Or Unfairness.......................................... 19

CONCLUSION ................................................................................................................. 21

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Allstate Ins. Co. v. Electrolux Home Prod., Inc.*,
 2016 WL 10514773 (C.D. Cal. Nov. 3, 2016) ...................................................20, 21

*Andersen v. Griswold Int'l, LLC*,
 2014 WL 12694138 (N.D. Cal. Dec. 16, 2014) ...................................................... 19

*Anticancer, Inc. v. Pfizer Inc.*,
 2012 WL 1019796 (S.D. Cal. Mar. 26, 2012) ....................................................... 20

*Bell Atlantic v. Twombly*,
 550 U.S. 544 (2007) ................................................................................ 10

*Blackman v. Teespring, Inc.*,
 2019 WL 7832600 (N.D. Cal. July 12, 2019) ....................................................... 19

*Blasco v. Atrium Med. Corp.*,
 2014 WL 12691051 (N.D. Cal. Oct. 30, 2014) ...................................................16, 19

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
 2018 WL 1242053 (N.D. Cal. Mar. 8, 2018) ........................................................ 14

*Calm Ventures LLC v. Newsom*,
 2021 U.S. Dist. LEXIS 31587 (C.D. Cal. Feb. 18, 2021) ............................................ 17

*Clifton v. Pearson Educ., Inc.*,
 2012 WL 1565236 (N.D. Cal. May 2, 2012) ........................................................ 10

*Coleman v. Quaker Oats Co.*,
 232 F.3d 1271 (9th Cir. 2000) ....................................................................... 21

*Corley v. Google*,
 316 F.R.D. 277 (N.D. Cal. 2016) ...............................................................17, 18

*Coughlin v. Rogers*,
 130 F.3d 1348 (9th Cir. 1997) ...................................................................... 16

*Crytek GmbH v. Cloud Imperium Games Corp.*,
 2018 WL 4854652 (C.D. Cal. Aug. 14, 2018) ....................................................... 13

*Cuprite Mine Partners LLC v. Anderson*,
 809 F.3d 548 (9th Cir. 2015) ....................................................................... 15

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
 528 F.3d 696 (9th Cir. 2008) ....................................................................11, 12

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
 2009 WL 10692013 (E.D. Cal. Nov. 18, 2009) ...................................................... 16

*Fulford v. Griffith*,
 2016 WL 7475607 (N.D. Cal. Dec. 29, 2016) ........................................................ 3

*Gilligan v. Jamco Dev. Corp.*,
 108 F.3d 246 (9th Cir. 1997) ....................................................................... 10

ii                                Case No.: 5:21-cv-04656-EJD

*Gutta v. Renaud*,
  2021 WL 533757 (N.D. Cal. Feb. 12, 2021)..........................................................................18

*Jordan-Benel v. Universal City Studios, Inc.*,
  2015 WL 3888149 (C.D. Cal. June 24, 2015)......................................................................12

*Kwan v. Schlein*,
  246 F.R.D. 447 (S.D.N.Y. 2007)..........................................................................................13

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
  2019 WL 1147599 (S.D.N.Y. Mar. 13, 2019) .....................................................................19

*Marshall v. Babbs*,
  2018 WL 6832087 (C.D. Cal. Dec. 26, 2018) .....................................................................12

*Marti v. Padilla*,
  2010 WL 1267120 (E.D. Cal. Mar. 30, 2010) .....................................................................21

*Martin Fam. Tr. v. Christian Rsch. Inst., Inc.*,
  2010 WL 11597956 (C.D. Cal. Nov. 16, 2010) ..................................................................14

*Mason v. Montgomery Data, Inc.*,
  741 F. Supp. 1282 (S.D. Tex. 1990) ...................................................................................12

*New Name, Inc. v. Walt Disney Co.*,
  2008 WL 5587487 (C.D. Cal. July 23, 2008) .....................................................................12

*Nguyen v. CTS Elecs. Mfg. Sols. Inc.*,
  301 F.R.D. 337 (N.D. Cal. 2014) ........................................................................................18

*Paramount Pictures Corp. v. Omniverse One World Tele., Inc.*,
  2019 WL 12381115 (C.D. Cal. Aug. 21, 2019) ..............................................................17, 19

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001)...............................................................................14

*Rodriguez v. Tilton*,
  2013 WL 1163796 (E.D. Cal. Mar. 20, 2013) .....................................................................21

*Rubloff Inc. v. Donahue*,
  1993 WL 189811 (N.D. Ill. June 3, 1993) ..........................................................................14

*Sanchez v. Schlumberger Tech. Corp.*,
  2020 WL 5367005, (S.D. Tex. Sept. 7, 2020) ....................................................................10

*Smith v. Weeknd*,
  2019 WL 6998666 (C.D. Cal. Aug. 23, 2019) ....................................................................12

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
  2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016) .......................................................................12

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  2010 WL 9934741 (N.D. Cal. Dec. 21, 2010) ....................................................................15

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) .............................................................................................................15

Case No.: 5:21-cv-04656-EJD
PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

*Velasquez v. FCA US, LLC,*
   2021 WL 2453147 (C.D. Cal. June 16, 2021)................................................................20

*Visendi v. Bank of America,*
   733 F.3d 863 (9th Cir. 2013)...........................................................................16, 17

*Vivo Per Lei, Inc. v. Bruchim,*
   2012 WL 13012883 (C.D. Cal. Apr. 23, 2012)...............................................................12

*Warren v. Fox Fam. Worldwide, Inc.,*
   171 F. Supp. 2d 1057 (C.D. Cal. 2001)......................................................................4

### Statutes and Rules

17 U.S.C. § 412(2) ....................................................................................11, 13

Fed. R. Civ. P. 20(a) ........................................................................10, 15, 16, 19

### Other Authorities

U.S. Copyright Office,
   COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed.) ..............................................15

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

1    Plaintiffs Big Run Studios Inc. ("Big Run") and Skillz Platform Inc. ("Skillz," and together

2    with Big Run, "Plaintiffs") respectfully submit this opposition to Defendant AviaGames Inc.'s

3    ("AviaGames") Motion To Dismiss And Sever Plaintiffs' Claims [ECF 33] ("Motion" or "Mot.").

4                                    **PRELIMINARY STATEMENT**

5    Skillz is the creator of a proprietary eSports gaming platform (the "Skillz Platform") that

6    enables independent game developers to integrate mobile eSports functionality into their games,

7    including functionality that allow players to engage in head-to-head competitions for cash and

8    prizes.  The Skillz Platform is designed to provide architecture, functionality, and features for

9    independent game developers to implement and improve players' gaming experiences.  Big Run is

10   one of those game developers—it created *Blackout Bingo*, an eSports competitive Bingo game that

11   is integrated into and runs on the Skillz Platform.  This means that for a user to play *Blackout Bingo*,

12   she must see and interact with creative elements of **both** the Skillz Platform and *Blackout Bingo*.

13   In this action, Plaintiffs allege that Defendant AviaGames willfully and intentionally copied

14   their copyrights in the Skill Platform and *Blackout Bingo* game (among other acts of

15   infringement)—right down to virtually identical replication of graphics, text, layout and design.

16   AviaGames does not dispute that Plaintiffs sufficiently state a claim of copyright infringement.

17   However, in an attempt to delay the inevitable, it asks the Court at the pleading stage to make

18   premature, complicated, fact-based rulings that are ultimately meritless.  The Court should reject

19   these efforts.

20   **First**, the Court should deny AviaGames's motion to dismiss Plaintiffs' prayer for statutory

21   damages and attorneys' fees.  As AviaGames admits, Plaintiffs allege that: (1) they have three

22   copyright registrations that were effective within three months of first publication, as required; and

23   (2) AviaGames infringed those works (among others).  That alone is enough to deny this motion.

24   While AviaGames argues that it qualifies for an exception because certain acts of infringement

25   began before those registrations issued, this ignores that Plaintiffs may seek statutory damages and

26   attorneys' fees for any **new** elements in those registrations that AviaGames infringed for the first

27   time after publication.

28

**Second**, the Court should deny AviaGames's motion to sever Big Run's and Skillz's copyright claim to create two separate lawsuits—an illogical waste of Court and party resources that is inconsistent with the Ninth Circuit's liberal approach to permissive joinder. There can be no doubt that each Plaintiff's claim arises out of the same series of transactions and occurrences, and presents common questions of fact and law. For example, when a user opens the *Blackout Bingo* app and proceeds past the opening screen, she is brought to an interface created and powered by the Skillz Platform, featuring Skillz's creative works. The player then plays *Blackout Bingo*, created by Big Run. When the game is complete, the user is then brought to a set of "results" screens and functions, created and powered by the Skillz Platform. In other words, a user's experience with *Blackout Bingo* requires her to interact with both Skillz's and Big Run's creative works that AviaGames infringed. The two are so interrelated that when players of AviaGames's infringing Bingo game were dissatisfied, they brought their complaints to **Skillz**.

Nor could it be in the interest of judicial economy to split this action into two cases. If the Court were to sever Big Run's and Skillz's claims, each of them would be subjected to third-party discovery in the other case anyway, resulting in no efficiencies while doubling discovery burdens. The cases AviaGames cites largely involve rulings where **dozens** of plaintiffs try to join **hundreds** of disparate claims in a single action. But AviaGames identifies no court that has ever severed a case brought by just two plaintiffs who together bring one copyright claim against one defendant.

The Court should deny AviaGames's motion to dismiss and to sever in its entirety.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether, accepting as true all facts alleged in the Complaint and construing all inferences in Plaintiffs' favor, AviaGames has demonstrated that Plaintiffs will be unable as a matter of law to offer evidence to support their request for statutory damages and attorneys' fees.

2.  Whether AviaGames has met its burden that the Court should sever Big Run's and Skillz's claim for copyright infringement to create two separate lawsuits, notwithstanding that: (a) Big Run's and Skillz's copyright claims arise out of the same series of transactions or occurrences and present common questions of fact and law; and (b) in any event, AviaGames has not demonstrated it would suffer prejudice absent severance.

## BACKGROUND[1]

The Complaint pleads a single count of copyright infringement arising out of AviaGames's infringement of copyrights owned by Big Run and Skillz.  *See* Complaint [ECF 1] ("Compl.") ¶¶ 1-13, 69-89.

**About Skillz:**  Founded in 2012, Skillz is the creator of a mobile eSports gaming platform that has revolutionized the mobile gaming industry: the Skillz Platform.  *Id*. ¶¶ 2, 23, 25.  The Skillz Platform allows independent mobile game developers to create successful game franchises and monetize user engagement primarily through prizes and competitions rather than in-game ads and purchases.  *Id*. ¶¶ 23-39, 55.  Game developers run their games on the Skillz Platform by integrating Skillz's Software Development Kit ("SDK") into their games, which allows developers to integrate Skillz's eSports user interface and functionality into mobile games.  *Id.* ¶¶ 26, 40, 62.  Skillz's SDK includes proprietary technology that ensures players in head-to-head competition are playing under identical, yet random, conditions.  *Id.* ¶ 6.  Skillz's SDK contains the Skillz Platform's original and creative elements that thousands of game developers have integrated into their mobile games.  *Id.* ¶¶ 26, 40-41.  Games that incorporate Skillz's software can be played only on the Skillz Platform.  *Id.* ¶ 6.  Skillz has eighteen copyright registrations for various versions of the Skillz Platform (by

---

[1]   While the Motion cites the Complaint to support its presented "relevant facts" (Mot. 1-4), many of these "facts" are not in the Complaint at all.  For example, the Complaint never alleges that AviaGames's Infringing Platform hosts "fun and engaging games all in one place where players can compete against each other for real money or other prizes."  (Mot. 1).  Rather, the cited paragraphs allege that: (1) AviaGames's Infringing Platform copies the original and creative expressions in the Skillz Platform, presenting side-by-side examples of screens showing how the two are "virtually indistinguishable" (Comp. ¶ 75); and (2) Skillz sent cease-and-desist letters about AviaGames's copying, but AviaGames made at most only minor cosmetic modifications (*id.* ¶ 79).  Plaintiffs need not flyspeck every statement in the Motion; the Court is aware it "must limit its review to the four corners of the operative complaint," and not the consider the characterizations in AviaGames's moving papers. *Fulford v. Griffith*, 2016 WL 7475607, at *3 (N.D. Cal. Dec. 29, 2016).

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

registering Skillz's SDK source code) that were first published between 2013 – 2021.  *Id.* ¶¶ 40-53.[2]
Two of these were registered within three months of the date of first publication of that particular
version.  *See* Declaration of Todd Anten ("Anten Decl.") Exs. 1-2 (certificates of registration).[3]

**About Big Run:**  Big Run is one of Skillz's "mobile game development partners," and the
creator of one of the Skillz Platform's most popular games, *Blackout Bingo*.  *Id*. ¶¶ 2, 56-57.
Launched in 2019, *Blackout Bingo* is a head-to-head competitive version of Bingo.  Its rules are
similar to those for standard Bingo, except that the two players compete using the same Bingo card,
and the same numbers are "called" in the same order, such that the players' skill is tested—the player
who scores more points wins.  *Id.* ¶¶ 52, 55-61.  Big Run has five copyright registrations in various
versions of its *Blackout Bingo* game, *id.* ¶¶ 58-59,[4] including one registered within three months of
the date of first publication of that version, *see* Anten Decl., Ex. 3 (certificate of registration).

***Blackout Bingo* Runs On The Skillz Platform:** *Blackout Bingo*, created by Big Run, is
integrated into and powered by the Skillz Platform through Skillz's SDK.  Renick Decl. ¶ 2.  That
is, *Blackout Bingo* incorporates the Skillz Platform user interface and is embedded into the user
experience.  *Id.*; *see also* Compl. ¶ 52.  When a player opens the *Blackout Bingo* app on her mobile
device, she is brought to the "Opening" screen (created by **Big Run**); upon selecting "PLAY NOW,"

---

[2]    *See* Compl. ¶ 41 (Reg. Nos. TX 8-928-328; TX 8-935-155; TX 8-935-162; TX 8-935-166;
TX 8-935-436; TX 8-935-442; TX 8-936-360; TX 8-936-365; TX 8-936-372; TX 8-936-685; TX
8-936-917; TX 8-940-428; TX 8-940-495; TX 8-940-855; TX 8-940-882; TX 8-941-331; TX 8-
948-308; TX 8-953-926).

[3]    The Declaration of Buren Renick ("Renick Decl."), and ¶ 5 of the Anten Declaration, are
submitted solely in connection with AviaGames's motion to sever.  The Court may take judicial
notice of the certificates of registration attached as Exhibits 1 – 3 to the Anten Declaration.  *See*
*Warren v. Fox Fam. Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) ("Copyright
certificates are the type of documents that the court may judicially notice under Rule 201(b)(2).").

[4]    *See* Compl. ¶ 58 (Reg. Nos. TX 8-970-737; TX 8-970-901; TX 8-970-904; TX 8-971-644;
TX 8-971-746).

she sees Skillz's "Loading" screen, which is part of the **<u>Skillz Platform</u>** user interface that is integrated into the *Blackout Bingo* app:



| (a) Opening screen | (b) Loading screen |
|---|---|

Anten Decl., ¶ 5(a)-(b); Renick Decl. ¶¶ 4-5.  The player is then brought to the "Challenge" screen, where she selects the type of game she wishes to play; she also may, for example, visit her "User Profile," visit the Skillz "Store" to deposit money in her account, view the leaderboard on the "Leagues" screen, or read "Skillz News" and frequently asked questions (FAQs) in the "Help Center."  These screens are all designed and powered by the **<u>Skillz Platform</u>** user interface, as reflected on the face of the displays; while Big Run may customize certain aspects of displays (for example, through theming), the user interface sources from Skillz, as the screens below remind:

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

| (c) Challenge screen | (c) Challenge screen (with menu) |
|---|---|
|  |  |

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

| (d) Deposit screen | (e) League screen |
|---|---|



Anten Decl., ¶ 5(c)-(e); Renick Decl. ¶ 6; *see also* Compl. ¶¶ 44-49 (showing examples of expression of Skillz Platform user interface, including features above). The player may also choose to enter a tournament to compete head-to-head against a randomly selected opponent of a similar level. Compl. ¶ 52. This pairing and random selection is made by the **Skillz Platform's** functionality, which uses its proprietary algorithms to match players based on ability level and game history to make sure that every tournament is fair. *Id.*



Anten Decl., ¶ 5(f); Renick Decl., ¶ 6.  The match begins with the head-to-head playing of *Blackout Bingo*—a game created by **<u>Big Run</u>**; when the match is over, **<u>Big Run</u>** shows her score.

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

Anten Decl., ¶ 5(g); Renick Decl. ¶ 7; Compl. ¶¶ 52, 60-61.  After a match is over and the player

sees her score, she is brought to the "Results" screen, which is powered by the **Skillz Platform** and

where the winner is awarded money or virtual currency ("Ticketz").



Anten Decl., ¶ 5(h); Renick Decl., ¶ 6; Compl. ¶ 52.  From there, the player may visit Skillz's Store

(to make a purchase or redeem Ticketz, all through Skillz), watch a replay, share the result with

friends, play another game of *Blackout Bingo*, or exit.  Compl. ¶ 52.

   In short, a user's experience interacting with *Blackout Bingo* necessarily requires interacting

with original and creative works created by and that belong to **both** Skillz (through the Skillz

Platform user interface and functionality) **and** Big Run (through the playing of *Blackout Bingo*).

   **AviaGames's Copyright Infringement:**  In 2016, AviaGames became a Skillz customer so

that it could gain access to Skillz's specialized knowledge and expertise.  Compl. ¶ 66.  Shortly

thereafter, AviaGames: (1) began building its own eSports platform that infringes the creative and

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

original elements of the Skillz Platform; and (2) began offering multiple knockoffs of games offered on the Skillz Platform, including a knockoff of *Blackout Bingo*.   *Id*. ¶¶ 68-77; *see also id.* ¶ 68 ("Infringing Platform now includes … a blatant knockoff of *Blackout Bingo*").   Because AviaGames infringes the copyrights both of the Skillz Platform, and of a Skillz partner's game that runs on that Platform, Skillz and Big Run filed the Complaint alleging copyright infringement.   *Id*. ¶¶ 82-89.[5]

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts the "Plaintiff's allegations of material fact as true and constru[es] them in the light most favorable to Plaintiff."  *Clifton v. Pearson Educ., Inc*., 2012 WL 1565236, at *6 (N.D. Cal. May 2, 2012) (Davila, J.).  "All ambiguities or doubts must be resolved in the plaintiff's favor."  *Id.* at *2.  "In reviewing the sufficiency of a complaint, '[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Id.* at *6 (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)).  Thus, a complaint need merely allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence supporting the allegation."  *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)).  On a motion to sever, "a defendant bears the burden to show that the plaintiffs' claims do not meet the requirements of Rule 20(a) ….  This is a high burden."  *Sanchez v. Schlumberger Tech. Corp.*, 2020 WL 5367005, at *2 (S.D. Tex. Sept. 7, 2020).

## ARGUMENT

### I.   PLAINTIFFS SUFFICIENTLY ALLEGE ENTITLEMENT TO STATUTORY DAMAGES AND ATTORNEYS' FEES

AviaGames's request to strike the Complaint's request for statutory damages and attorneys' fees raises factual questions regarding the scope of Plaintiffs' copyright registrations, the details of

---

[5]   AviaGames is wrong in asserting (Mot. 2-3) that this case was brought because Skillz's pending patent infringement case against AviaGames is "in jeopardy"—a spurious characterization irrelevant to the Motion.  Skillz's opposition to AviaGames's motion to dismiss the patent case speaks for itself, *see Skillz Platform Inc. v. AviaGames Inc.*, No. 5:21-cv-02436, Dkt. 33 (N.D. Cal. July 2, 2021), and discovery is proceeding there with full force, *see id.*, Dkt. 53 (scheduling order).

1   AviaGames's acts of copying, and the timing of AviaGames's infringement, all of which are

2   inappropriate for resolution at the pleading stage.

3       A plaintiff may seek statutory damages and attorneys' fees for "infringement of the copyright

4   of a work" if the work was registered within "three months after the first publication of the work."

5   17 U.S.C. § 412(2).  Even if a work is not registered within three months after first publication, a

6   plaintiff can still recover statutory damages and attorneys' fees if the infringement commenced after

7   the effective date of the registration.  *Id.*

8       There is no dispute that three of Plaintiffs' works were registered within three months after

9   their first publication: (1) Reg. No. TX 8-928-328 (Skillz Platform version 26.0.25); (2) Reg No.

10  TX 8-935-436 (Skillz Platform version 26.2.9); and (3) Reg. No. TX 8-971-746 (*Blackout Bingo*

11  version 1.0.28).[6]  Nor is there any dispute that Plaintiffs allege that AviaGames infringed these three

12  works (among many others).   Compl. ¶ 83.   Thus, Plaintiffs may seek statutory damages and

13  attorneys' fees for AviaGames's infringement of—at minimum—these three works.

14      AviaGames does not dispute these allegations, but rather asks the Court (Mot. 4-7) to rule

15  on the pleadings that it is entitled to an exception because certain acts of infringement supposedly

16  "commenced" before the Statutory Works were registered.  AviaGames is wrong.  To be sure, the

17  Ninth Circuit recognizes that a plaintiff cannot be awarded statutory damages for infringement that

18  began prior to the registration of the work and continued **<u>unchanged</u>** after registration.  For example,

19  if a defendant infringes a plaintiff's copyrighted hang-tag prior to registration, and then continues

20  using the same infringing hang-tag after registration, statutory damages are unavailable.  *Derek*

21  *Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 698 (9th Cir. 2008)  (no statutory damages where

22  defendant's infringement of hang-tag did not change after registration).

---

23      6   As the certificates of registration show: (1) Reg. No. TX 8-928-328 has a first publication

24  date of October 22, 2020 and effective registration date of January 21, 2021; (2) Reg No. TX 8-935-

25  436 has a first publication date of January 26, 2021 and effective registration date of February 13,

26  2021; and (3) Reg. No. TX-8-971-746 has a first publication date of May 12, 2021 and effective

27  registration date of June 8, 2021.  *See* Anten Decl., Exs. 1-3 (certificates of registration).

28

AviaGames does not, however, address the scenario presented here: an infringer copies an unregistered work, the plaintiff then registers a subsequent version of the work with **new** elements (*i.e.*, a derivative work), and the infringer then subsequently copies those **new** elements in later acts of infringement.[7]  Indeed, each of the registrations for the three works discussed above explicitly exclude from their scope material from "[p]revious … versions." Anten Decl., Exs. 1-3.  In such circumstances, statutory damages and attorneys' fees are available because "[a] new or separate basis for the award of statutory damages is created … where there is a difference between pre- and post-registration infringing activities." *Marshall v. Babbs*, 2018 WL 6832087, at *2 (C.D. Cal. Dec. 26, 2018) (quoting *Mason v. Montgomery Data, Inc.*, 741 F. Supp. 1282, 1285 (S.D. Tex. 1990)). Imagine, for example, that a defendant infringes a book that is not registered.  If the plaintiff then adds **new** material to that book and registers it, and after that the defendant begins copying that **new** material, the plaintiff may seek statutory damages for the infringement of this new material because "there is a difference between pre- and post-registration infringing activities." *Marshall*, 2018 WL 6832087, at *2.  AviaGames thus errs in arguing that "every copyright holder could circumvent the Copyright Act to claim statutory damages by updating and registering a work after the alleged infringement began" (Mot. 6) because it ignores a defendant's change in its post-registration activity.  Otherwise, a defendant who infringes a book before it was registered could then later copy

---

[7]   For this reason, AviaGames's cited authorities (Mot. 4) are inapposite.  *See Derek Andrew, Inc.*, 528 F.3d at 698 (defendant's hang-tag remain unchanged); *Smith v. Weeknd*, 2019 WL 6998666, at *6 (C.D. Cal. Aug. 23, 2019) (infringement of plaintiff's unchanged song); *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016) (infringement of "same tattoo designs" in video game did not change between pre- and post-registration); *Jordan-Benel v. Universal City Studios, Inc*., 2015 WL 3888149, at *13 (C.D. Cal. June 24, 2015) (infringements of plaintiff's unchanged work); *Vivo Per Lei, Inc. v. Bruchim*, 2012 WL 13012883, at *3 (C.D. Cal. Apr. 23, 2012) (no dispute registrations were untimely); *New Name, Inc. v. Walt Disney Co*., 2008 WL 5587487, at *4 (C.D. Cal. July 23, 2008) (C.D. Cal. July 23, 2008) (summary judgment: defendants "applied the very same infringing design to two products").

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

1   verbatim every sequel to that book, even if the sequels were registered in advance of their first

2   publication.  The Copyright Act permits no such runaround.

3          With this understanding, AviaGames's remaining arguments fall by the wayside.   For

4   example, as to Big Run (Mot. 5-6), statutory damages and attorneys' fees are available for elements

5   that: (1) first appeared in the version of *Blackout Bingo* published on May 12, 2021 (Reg. No. TX-

6   8-971-746); and (2) AviaGames first copied after that date. And as to Skillz (Mot. 6-7), statutory

7   damages and attorneys' fees are available for elements that: (1) first appeared in the versions of the

8   Skillz Platform published on October 22, 2020 or January 26, 2021 (Reg. Nos. TX 8-929-328 and

9   TX 8-935-436); and (2) AviaGames first copied after those dates.  That is, even looking only to

10  these three works,[8] Plaintiffs satisfy their pleading burden.

11         **First**, while AviaGames tries to downplay (Mot. 5-7) such allegations by characterizing any

12  new elements in these three works as "minor update[s]," this not only plainly presents factual

13  disputes outside of the pleadings, but has no bearing on whether Plaintiffs state a claim for statutory

14  damages and attorneys' fees.  *See Kwan v. Schlein*, 246 F.R.D. 447, 453 & n.2 (S.D.N.Y. 2007)

15  (whether earlier version of work is or "is not distinct" from later-registered version presents "a

16  factual dispute [that] cannot be resolved on … a motion to dismiss").  For this reason, courts deny

17  motions to dismiss requests for statutory damages as premature on the ground that "the parties

18  [should] engage in discovery" first.  *Crytek GmbH v. Cloud Imperium Games Corp.*, 2018 WL

19  4854652, at *13-14 (C.D. Cal. Aug. 14, 2018) ("there may be discoverable post-registration

20  independent acts of infringement not expressly alleged in the [Complaint]"); *see also, e.g.*, *Niantic,*

21  *Inc. v. Global++*, 2020 WL 8620002, at *6 (N.D. Cal. Sept. 2, 2020) ("Whether Defendants' post-

22  registration activities amount to a continuous and ongoing act of the initial infringement is a factual

23  _____

24         [8]   AviaGames improperly assumes (Mot. 5) that it began infringing **all** elements of Plaintiffs'

25  other registrations before those registrations issued, but cites no allegation in the Complaint to

26  compel that conclusion.  Because 17 U.S.C. § 412(2) allows Plaintiffs to recover statutory damages

27  and attorneys' fees for infringement that commenced after the registration issued, Plaintiffs may

28  recover for any such new acts of post-registration infringement for the remaining works too.

dispute not appropriate for adjudication before the parties have had an opportunity to develop the record."); *Rubloff Inc. v. Donahue*, 1993 WL 189811, at *2 (N.D. Ill. June 3, 1993) ("new or separate bases for the award of statutory damages can be created where there are differences between pre- and post-infringing activities" and "sufficient discovery has not been completed to resolve this issue and … it would be more appropriate to consider this issue on a motion for summary judgment").

**Second**, AviaGames attempts to improperly hold Plaintiffs to a heightened pleading standard, challenging that: (1) "Big Run never identifies any allegedly infringing elements of *Bingo Clash* that are found solely in version 1.0.28 of *Blackout Bingo*, as opposed to the earlier versions" (Mot. 6); and (2) that Skillz does not "identify any infringing elements of *Pocket7Games* that are found solely in" the two eligible registered works (Mot. 7).  But Plaintiffs have no burden to allege with particularity: (1) each individual element that first appeared in the Statutory Works (or any of the other 20 registrations for versions of the Skillz Platform or *Blackout Bingo*); (2) each such individual element that AviaGames infringed; or (3) the specific dates Plaintiffs first published, and AviaGames first infringed, each such element.  AviaGames cites no authority supporting such a heightened pleading standard, nor could it because Plaintiffs sufficiently identify the works infringed and AviaGames's infringement.  *See, e.g.*, *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) (purported "failure of [plaintiff] to state, in its complaint, every copyright relied on, every individual image in the magazines that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement … misconstrues the burden [plaintiff] faces in the pleadings stage.  Copyright claims need not be pled with particularity."); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co*., 2018 WL 1242053, at *6 (N.D. Cal. Mar. 8, 2018) ("because Plaintiffs are not required to plead every instance of infringement, their claims are not necessarily limited to 'War Chief' and 'Rifleman'"); *Martin Fam. Tr. v. Christian Rsch. Inst., Inc.*, 2010 WL 11597956, at *3 (C.D. Cal. Nov. 16, 2010) (rejecting argument that "Plaintiffs fail to allege when the alleged copyright infringement took place" because "[t]here is no heightened pleading standard for copyright infringement.").  AviaGames's fact-based dispute about whether specific elements it infringed are "found solely" in certain versions will be developed in discovery.

**Third**, as to Skillz, AviaGames is wrong in hinting (Mot. 7) that Skillz did not even allege that AviaGames infringed the two Skillz Platform works that fall within the three-month window. The Complaint alleges that Skillz's copyrights in the Skillz Platform are reflected within the registrations listed—including Reg. Nos. TX 8-928-328 and TX 8-935-436—which in turn are included in the defined term "Skillz Works." Compl. ¶¶ 41-42; *see also id.* ¶ 43 (alleging certificates are for "Skillz Works"); *id.* ¶¶ 69, 83-85 (AviaGames infringed Skillz's copyrights in "Skillz Works"). Construing the Complaint in Skillz's favor, Skillz plainly alleged that AviaGames infringed those two registered works (as well as the other registered Skillz Platform works). This also complies with how the Copyright Office instructs such materials to be registered. *See* U.S. Copyright Office, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 721.10(A) (3d ed.).

## II.     PERMISSIVE JOINDER OF PLAINTIFFS' CLAIMS IS APPROPRIATE

AviaGames also moves the Court to sever Big Run's and Skillz's copyright claim into two separate lawsuits (Mot. 7-12). Although the Court may deny this motion as premature "because the case is still in its initial phases," *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 9934741, at *4 (N.D. Cal. Dec. 21, 2010), it should simply deny the motion because AviaGames fails to establish that joinder is unavailable and prejudicial. Tellingly, AviaGames does not cite a **single** case that severed an action where two copyright plaintiffs brought one claim against one defendant.

"Permissive joinder is to be liberally construed to promote the expeditious determination of disputes, and to prevent multiple lawsuits." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 552 (9th Cir. 2015). Rule 20 provides that "[p]ersons may join in one action as plaintiffs if: … they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and … any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "Under the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

"[E]ven if joinder were inappropriate under Rule 20(a) … severance is at the discretion of the district court and a party seeking severance ordinarily bears the burden of demonstrating that it

will suffer some prejudice or harm if the parties are not severed." *Blasco v. Atrium Med. Corp.*, 2014 WL 12691051, at *8 (N.D. Cal. Oct. 30, 2014). "[C]ourts generally disfavor such motions, placing a high burden on the moving party to show **significant** prejudice absent severance of the claim, and that the issues to be severed are truly distinct and separable." *Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 10692013, at *2 (E.D. Cal. Nov. 18, 2009) (emphasis added).

### A.   Plaintiffs' Copyright Infringement Claims Arise Out Of The Same Transaction, Occurrence, Or Series Of Transactions Or Occurrences

Each Plaintiff's infringement claim arises out of the same transaction or series of transactions. As AviaGames concedes, Rule 20(a)(1)'s first prong merely requires some "factual similarity" among the claims. Mot. 8 (citing *Visendi v. Bank of Am.*, 733 F.3d 863, 870 (9th Cir. 2013)); *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997) (prong "refers to similarity in the factual background of a claim"). Such similarity is present here. AviaGames does not deny that the Complaint alleges: (1) AviaGames has infringed Skillz's eSports gaming platform by building an infringing "copycat eSports [gaming] platform" (Compl. ¶ 7); (2) AviaGames uses its Infringing Platform to "launch knockoff mobile versions of Skillz's top games" (*id.*); (3) one of those games that AviaGames infringed includes an obvious knockoff of *Blackout Bingo*, one of the most popular games on the Skillz Platform, created by Skillz's "development partner" Big Run (*id.* ¶¶ 2-4). Moreover, as discussed above (*see supra* 3-10), the *Blackout Bingo* app integrates the Skillz Platform user interface, such that customers who play *Blackout Bingo* necessarily encounter aspects of **both** the Skillz's and Big Run's works that AviaGames infringed. This pattern of infringement establishes that Plaintiffs' claims arise out of the same series of transactions or occurrences.

Rather than address this extensive overlap, AviaGames hyper-focuses (Mot. 9) on cherry-picked dissimilarities such as: (1) the specific days Skillz and Big Run became aware of AviaGames's infringement; (2) the specific days Skillz and Big Run registered their works; (3) the specific days Skillz and Big Run complained to the Apple App Store; and (4) that Skillz and Big Run initially had different lawyers send AviaGames cease-and-desist letters. But these distinctions have no bearing on the merits of AviaGames's pattern of copying of these works together, which continues to today. Compl. ¶¶ 79-80. Nor are these "disparities of [] magnitude" (Mot. 9) that some

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

courts found problematic.  In *Visendi v. Bank of America*, 733 F.3d 863, 870 (9th Cir. 2013) (cited Mot. 9) (not a copyright case), for example, a single action involved **160** plaintiffs suing **15** different defendants about "over 100 distinct loan transactions" made by different lenders on different properties "scattered across the country" on different terms.  And in *Calm Ventures LLC v. Newsom*, 2021 U.S. Dist. LEXIS 31587, at *5-6 (C.D. Cal. Feb. 18, 2021) (cited Mot. 9) (not a copyright case), the "disparities" involved seven unrelated "[p]laintiffs operat[ing] businesses in different industries—restaurants, hair salons, nail salons, and skincare services—which [were] … located in different counties, which, … subject[ed] them to different restrictions under" the challenged orders.

In contrast, courts allow copyright plaintiffs to join together in cases with far less factual similarity than those here.  In *Paramount Pictures Corp. v. Omniverse One World Tele., Inc*., 2019 WL 12381115, at *2 (C.D. Cal. Aug. 21, 2019), for example, the defendants obtained unrelated copyrighted movies and TV shows owned by **eight** unrelated plaintiff movie studios and made them available for viewing on illicit downloading services.  *Id.*  The plaintiffs included a "representative" list of more than 50 separate works, with registration dates ranging across more than 30 years (from 1984 to 2017).  *Id.*, No. 2:18-cv-230, Dkt. 1-1 (C.D. Cal. Feb. 14, 2019).  The Court held joinder was proper because the infringement claims "[arose] out of the same of transactions or occurrences" based on the unitary "business model" employed, even though the plaintiffs each owned different works that the defendants made available on different services.  *Id.*, 2019 WL 12381115, at *1-2. The result was not altered by the fact that some works were movies and others were TV shows, that eight different owners registered the works across a 30-year timeframe, or that the defendants allegedly offered different services that infringed in different ways.  So too here, Plaintiffs allege that AviaGames adopted a business model premised on infringement, including the copying of: (1) the Skillz's eSports gaming platform; (2) the top games offered on that singular platform (including *Blackout Bingo*); and (3) even Skillz's advertisements for its gaming platform.

Nor is there a rule that joinder is unavailable when "different products or processes are involved," as AviaGames suggests.  Mot. 8 (citing *Corley v. Google*, 316 F.R.D. 277, 283 (N.D. Cal. 2016)).  *Corley* involved an action brought by **879** individual plaintiffs who alleged that Google violated the Wiretap Act by intercepting and scanning their emails through the use of multiple

different products after a similar case had been denied class certification.  *Id.* at 277, 280.  There, the plaintiffs' counsel conceded during a scheduling conference that there were factual differences in what each individual plaintiff saw and knew.  *Id.* at 281.  The Court ruled that "mass joinder" of the 879 plaintiffs' claims raised "intensely individualized" questions about whether each provided the requisite consent to terms of service associated with different email programs of numerous different universities.  *Id.* at 285.  No such "intensely individualized" concerns are present here. And in any event, the *Blackout Bingo* app presents both Plaintiffs' works in a single user experience.

### B.   <u>Questions Of Law Or Fact Common To Both Plaintiffs Will Arise</u>

"The second part of the permissive joinder test is met if any question of law or fact common to all plaintiffs will arise in the action. …  Commonality is not a particularly stringent test' and Rule 20 'requires only a single common question, not multiple common questions."  *Gutta v. Renaud*, 2021 WL 533757, at *6 (N.D. Cal. Feb. 12, 2021) (quotations omitted). "The common question may be one of fact **or** of law and need not be the most important or predominant issue in the litigation." *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014) (emphasis added).

Contrary to AviaGames's assertion (Mot. 10), the fact that both Plaintiffs bring a claim under the Copyright Act is not the "only" common question.  As detailed above, *Blackout Bingo* runs exclusively on the Skillz Platform, is powered by the Skillz Platform, and integrates the Skillz Platform that AviaGames infringed.  *See* Compl. ¶¶ 6, 69-76; Renick Decl. ¶¶ 2-7; Anten Decl. ¶ 5. Thus, factual and legal questions about AviaGames's accessing and copying *Blackout Bingo* will implicate its accessing and copying the Skillz Platform.  Moreover, common questions surrounding AviaGames's intent will be unavoidable, as Plaintiffs allege that AviaGames intentionally copied Skillz eSports gaming platform intellectual property to build a copycat eSports gaming platform, and then launched knockoff games of those that ran exclusively on the Skillz Platform, **including** *Blackout Bingo*.  Compl. ¶¶ 7, 69, 74.  There are multiple commonalities of fact and law.

AviaGames instead points (Mot. 10) to questions it claims are **not** common, such as "the validity and ownership" of the Skillz Platform and *Blackout Bingo*.  Rule 20 does not require complete identity of every issue, but rather that "**any** question of law or fact" be common to Plaintiffs. Fed. R. Civ. P. 20(a)(1)(B) (emphasis added).  If AviaGames were correct, then plaintiffs

who own separate registrations would **<u>never</u>** be able to join a single action, an absurd result.  Courts therefore routinely permit multiple copyright plaintiffs to join infringement claims—even when their works were **<u>unrelated</u>** and ownership and validity had to be shown on a work-by-work basis. *See, e.g.*, *Paramount*, 2019 WL 12381115, at *2; *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, 2019 WL 1147599, at *2 (S.D.N.Y. Mar. 13, 2019) (denying motion to sever copyright claims of three plaintiffs who were artists against single defendant who infringed their separate artworks).

### C.      AviaGames Has Not Proven Prejudice Or Unfairness

Even if joinder were not technically appropriate under Rule 20(a) (and it is), the Court retains discretion to allow joinder where the defendant fails to satisfy its burden that it will face significant prejudice.  *See Blasco*, 2014 WL 12691051, at *8.  Such arguments are premature at the pleading stage, favoring joinder.  *See Andersen v. Griswold Int'l, LLC*, 2014 WL 12694138, at *8 (N.D. Cal. Dec. 16, 2014) ("At the pleading stage, joinder should have little, if any, prejudicial effect, hence, even 'marginally related' parties should be permitted to join if consistent with the promotion of judicial economy.").  Moreover, AviaGames gets the standard backward by arguing (Mot. 11) that Plaintiffs would not be prejudiced by pursing two lawsuits, when it is **<u>AviaGames's</u>** burden to show it would be prejudiced absent severance.  In any event, AviaGames does not meet its burden.

**<u>First</u>**, AviaGames's unsupported assertion (Mot. 11) that "[k]eeping the cases together will unnecessarily complicate the Court's ability to adjudicate" is baseless.  AviaGames's only cited authority is a case brought by **<u>twenty-eight</u>** national and international individual artist plaintiffs who brought infringement claims involving **<u>one thousand</u>** copyrights used in various unrelated industries.  Mot. 11 (citing *Blackman v. Teespring, Inc*., 2019 WL 7832600, at *1 (N.D. Cal. July 12, 2019)).  Here, however, there are two core sets of copyrighted works at issue owned by just two claimants: (1) works relating to the Skillz Platform; and (2) versions of *Blackout Bingo*, which runs on the Skillz Platform.  Maintaining these claims in one action will reduce complication, not increase it.  *See Laser Kitten*, 2019 WL 1147599, at *3 (joinder proper where "Plaintiffs' discovery demands and witness testimony will have extensive overlap, addressing the common transactions and occurrences that led to the creation, marketing, and sales of Defendant's allegedly infringing products").  Conversely, requiring Plaintiffs to pursue two separate copyright infringement lawsuits

will lead to "separate and redundant actions" regarding the overlapping issues discussed above. *Velasquez v. FCA US, LLC*, 2021 WL 2453147, at *3 (C.D. Cal. June 16, 2021).[9]

**Second**, that Skillz (but not Big Run) is pursuing a separate patent infringement case against AviaGames (Mot. 11-12) is wholly irrelevant.  The instant action involves a claim stemming from copyright infringement of both Plaintiffs' original and creative works; the patent action does not.

**Third**, AviaGames will not face "undue prejudice" by "defend[ing] against distinct claims, involving separate discovery and potential motion practice, all on the same case schedule."  Mot. 12.  AviaGames would equally need to defend itself against Big Run's and Skillz's copyright claims whether or not the case is severed, including discovery and motion practice, on proximate schedules. Severing the case, however, would prejudice Plaintiffs by requiring Big Run and Skillz to litigate two overlapping copyright cases against the same defendant in two different actions at the same time, whereas proceeding in a single action would **reduce** duplicative discovery and motion practice.  *See Allstate Ins. Co. v. Electrolux Home Prod., Inc*., 2016 WL 10514773, at *1 (C.D. Cal. Nov. 3, 2016) (denying motion to sever, noting joinder "will best facilitate … judicial economy … having coordinated discovery for the likely factual similarities among the claims will certainly be more economical").  Indeed, a case brought only by Big Run would necessarily require extensive third-party discovery from Skillz anyway and vice versa, meaning the burden of discovery and motion practice on Skillz and Big Run would likely be doubled should the claims be severed.

**Fourth**, AviaGames's phantom fear of "jury bias or confusion" (Mot. 12) is unfounded; the parties have not exchanged any discovery yet, let alone developed a record about unidentified "sympathies" or generic concerns about a jury's ability to "keep track" of facts or witnesses.  A count of copyright infringement is being litigated in this case—a far less complex issue than what many that juries in this court hear; any distinctions may be addressed through jury instructions.  *See Anticancer, Inc. v. Pfizer Inc.*, 2012 WL 1019796, at *3 (S.D. Cal. Mar. 26, 2012) (denying motion to sever where defendant "failed to convince the Court that a jury instruction would not cure any

---

[9]   AviaGames provides no support for its bare assertion (Mot. 11) that it "will likely provide different witnesses and evidence to defend" the action.

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

potential confusion").[10]   At most, AviaGames's jury arguments are best left for when trial is

imminent.  *See Rodriguez v. Tilton*, 2013 WL 1163796, at *7 (E.D. Cal. Mar. 20, 2013) (denying

motion to sever: "[i]f, after all dispositive motions have been decided, defendants believe that a

single trial would be prejudicial, they may refile their motion to sever and move the court to order

separate trials in the interest of justice"); *Marti v. Padilla*, 2010 WL 1267120, at *1 (E.D. Cal. Mar.

30, 2010) (similar); *Allstate Ins.*, 2016 WL 10514773, at *1 (similar).

## **CONCLUSION**

AviaGames's motion should be denied in its entirety.

Dated:  September 9, 2021

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By:  */s/ Todd Anten*
   Todd Anten

Sean S. Pak (Bar No. 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Lance L. Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Todd Anten (*pro hac vice*)
toddanten@quinnemanuel.com
Cory D. Struble (*pro hac vice* pending)
corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Plaintiffs*

---

[10]   In contrast, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (cited at Mot.

12) involved ten victims of unrelated acts of employment discrimination at workplaces located in

six different states that would require jury evaluation of six different sets of state laws.

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

This document is being filed through the Electronic Case Filing (ECF) system by attorney Todd Anten.  By his signature, Todd Anten attests that he has obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: September 9, 2021                                    By  */s/ Todd Anten*
                                                                                Todd Anten

PLAINTIFFS' OPPOSITION TO DEFENDANT AVIAGAMES, INC.'S
MOTION TO DISMISS AND SEVER PLAINTIFFS' CLAIMS